AO 250 (Rev. 09/2024) Pro Se Motion for Compassionate Release

FILED
LODGED
RECEIVED **MAIL**

# UNITED STATES DISTRICT COURT
## FOR THE

MAR 0 2 2026

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                    DEPUTY

__WESTERN__ DISTRICT OF __WASHINGTON__

UNITED STATES OF AMERICA

v.

__Randolph George Duey__
Write your full name here.

Case No. __CR85-001 M__
(Write the number of your criminal case.)

**MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release)**
AND OLD RULE 35(b)

(*Pro Se* Inmate)

---

### NOTICE

The public can access electronic court files. Federal Rule of Criminal Procedure 49.1 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain a person's full social security number or full birth date, the full name of a person known to be a minor, or a complete financial account number. A filing may include *only* the last four digits of a social security number, the year of a person's birth, a minor's initials, and the last four digits of a financial account number.

---

## I. DOCUMENTS AND REQUEST TO SEAL

Does this motion include a request that any documents attached to this motion be filed under seal? (Documents filed under seal are not available to the public.)

☐ Yes ☒ No

## ATTACHMENTS

If you answered "Yes," please list below the documents you request be filed under seal:

_____

_____

DUEY, RANDOLPH 09894016

AO 250 (Rev. 09/2024) Pro Se Motion for Compassionate Release

Please list below any documents you are attaching to this motion. A proposed release plan is included as an attachment. You are encouraged, but not required, to complete the proposed release plan. Also, a cover page for the submission of medical records and additional medical information is included as an attachment to this motion, as well as a cover page for the submission of additional information (for example, information related to victim abuse under §1B1.13(b)(4)). Again, you are not required to provide medical records or this additional information. For each document you are attaching to this motion, state whether you request that it be filed under seal because it includes confidential information.

| Document | Attached? | Request to Seal? |
|---|---|---|
| Proposed Release Plan | ☒ Yes ☐ No | ☐ Yes ☒ No |
| Additional Medical Information | ☒ Yes ☐ No | ☐ Yes ☒ No |
| Additional Information (e.g., victim abuse-related information under §1B1.13(b)(4) | ☒ Yes ☐ No | ☐ Yes ☒ No |

## II. REQUEST FOR APPOINTMENT OF COUNSEL

I request that an attorney be appointed to help me.

☐ Yes ☒ No

## III. SENTENCE INFORMATION

Date of Sentencing: _February 1986_

Term of Imprisonment Imposed: _100 years_

Approximate Time Served to Date: _41 years_

Projected Release Date: _July, 2043_

Length of Term of Supervised Release: _To be determined_

Have you filed an appeal in your case?

☒ Yes ☐ No

Are you subject to an order of deportation or an ICE detainer?

☐ Yes ☒ No

DUEY, RANDOLPH 09884016

AO 250 (Rev. 09/2024) Pro Se Motion for Compassionate Release

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES[1]

Title 18 U.S.C. § 3582(c)(1)(A) allows you to file this motion (1) after you have fully exhausted all administrative rights to appeal a failure of the Federal Bureau of Prisons (BOP) to bring a motion on your behalf or (2) 30 days after the warden of your facility received your request that the warden make a motion on your behalf, whichever is earlier.

Please include copies of any written correspondence to and from the BOP related to your motion, including your written request to the warden and records of any denial from the BOP.

Have you personally submitted your request for compassionate release to the warden of the institution where you are incarcerated?

☒ Yes, I submitted a request for compassionate release to the warden on (date) *Dec. 30, 2025*
☐ No, I did not submit a request for compassionate release to the warden.

If you answered "No," please explain why not.

_____

_____

Did the warden deny your request? *There was no response.*

☐ Yes, the warden denied my request on (date) _____ .
☐ No, I did not submit a request for compassionate release to the warden.

## V. GROUNDS FOR RELEASE

This section includes specific citations to sections of the U.S. Sentencing Guidelines, specifically the policy statement at §1B1.13 (Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)), often referred to as "compassionate release."

Please use the checkboxes below to state the grounds for your request for compassionate release. Please select all grounds that apply to you. You may attach additional sheets if necessary to further describe the reasons supporting your motion. You also may attach any relevant exhibits. Exhibits may include medical records if your request is based on a medical condition, or a statement from a family member or sponsor.

---

[1] The requirements for filing this compassionate release motion with the court differ from the requirements for submitting a compassionate release request to the BOP. This form should be used only for a compassionate release motion made to the court. If you are submitting a compassionate release request to the BOP, please review and follow the BOP program statement.

DUEY, RANDOLPH 09334016

AO 250 (Rev. 09/2024) Pro Se Motion for Compassionate Release

## A. Are you at least 70 years old?

☒ Yes ☐ No

If you answered "No," go to Section B below. You do not need to fill out Section A.

If you answered "Yes," you may be eligible for release under 18 U.S.C. § 3582(c)(1)(A)(ii) if you meet two additional criteria. *See* §1B1.13(a)(1)(B). Please answer the following questions so the court can determine if you are eligible for release under this section of the statute.

Have you served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense(s) for which you are currently imprisoned?

☒ Yes ☐ No

Has the Director of the BOP determined that you are not a danger to the safety of any other person or the community, as provided under 18 U.S.C. § 3142(g)?

☒ Yes ☐ No    *refer to additional pages "Release Plan"*

## B. Do you believe there are other extraordinary and compelling reasons for your release?

☒ Yes ☐ No

If you answered "Yes," please check all boxes that apply so the court can determine whether you are eligible for release under 18 U.S.C. § 3582(c)(1)(A)(i). Section 3582(c)(1)(A) authorizes a court to reduce a defendant's term of imprisonment if "extraordinary and compelling reasons" warrant a reduction and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

☐ I am suffering from a terminal illness. *See* §1B1.13(b)(1)(A).

☐ I am suffering from:

- a serious physical or medical condition;
- a serious functional or cognitive impairment; or
- deterioration in my physical or mental health because of the aging process

that substantially diminishes my ability to provide self-care within the environment of a correctional facility, and I am not expected to recover from this condition. *See* §1B1.13(b)(1)(B).

DUEY, RANDOLPH 09884016

AO 250 (Rev. 09/2024) Pro Se Motion for Compassionate Release

---

☐ I am suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which I am at risk of serious deterioration in health or death. *See* §1B1.13(b)(1)(C).

☐ There is an ongoing outbreak of infectious disease or ongoing public health emergency affecting, or at imminent risk of affecting, my correctional facility that, due to personal health risk factors and custodial status, has caused me an increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency, and such risk cannot be adequately mitigated in a timely manner. *See* §1B1.13(b)(1)(D).

☒ I am 65 years old or older; I am experiencing a serious deterioration in physical or mental health because of the aging process; and I have served at least 10 years or 75 percent of my term of imprisonment, whichever is less. *See* §1B1.13(b)(2).    *see additional pages*

☐ The caregiver of minor child/children or my child/children who is/are 18 years of age or older and incapable of self-care because of a mental or physical disability or mental condition has died or become incapacitated, and I am the only available caregiver for my child/children or adult disabled child/children. *See* §1B1.13(b)(3)(A).

☐ My spouse/registered partner, parent, immediate family member (child, spouse, registered partner, parent, grandchild, grandparent, or sibling), or someone whose relationship is similar to that of an immediate family member has become incapacitated, and I am the only available caregiver for them. *See* §1B1.13(b)(3)(B), (C), and (D).

☐ While serving this sentence, I was a victim of:

- sexual abuse involving a "sexual act," as defined in 18 U.S.C. § 2246(2); or
- physical abuse resulting in "serious bodily injury"

that was committed by or at the direction of a correctional officer, an employee, or contractor of the BOP or any other individual having custody or control over me. *See* §1B1.13(b)(4).

☐ There is another circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described above, are similar in gravity to the reasons described above. *See* §1B1.13(b)(5).

☒ I received an unusually long sentence, I have served at least 10 years of the term of imprisonment, and a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) would produce a gross disparity between the sentence

DUEY, RANDOLPH 09884016

AO 250 (Rev. 09/2024) Pro Se Motion for Compassionate Release

being served and the sentence likely to be imposed on the date I filed this motion, after full consideration of my individualized circumstances. *See* §1B1.13(b)(6).

Please explain below the basis for your request. If there is additional information that you would like the court to consider but which is confidential, you may include that information on a separate page; attach the page to this motion; and, in Section I above, request that that attachment be sealed.

See attached copy of letter to Warden Jones. Also, see extra pages outlining all extra reasoning for my request.

## VI. PREVIOUSLY FILED MOTIONS

Have you previously filed any motions for a reduction in sentence (compassionate release) under 18 U.S.C. § 3582(c)(1)(A) (in any court)?

☐ Yes ☒ No                                    *sent back*

If you answered "Yes," were any of your previous motions granted?

☐ Yes ☒ No

If you have previously filed any motions for a reduction in sentence (compassionate release) under 18 U.S.C. § 3582(c)(1)(A), what about your circumstances or the law has changed since your other motion(s) that you believe now makes you eligible? Please provide details below.

I filed a Compassionate Release petition but didn't know what I was doing. It was sent back because I'm Old Law and 3582 didn't apply to me, then.

DUEY, RANDOLPH 09884016

AO 250 (Rev. 09/24) Pro Se Motion for Compassionate Release

## VII. MOVANT'S DECLARATION AND SIGNATURE

For the reasons stated in this motion, I move the court for a reduction in sentence (compassionate release) under 18 U.S.C. § 3582(c)(1)(A). I declare under penalty of perjury that the facts stated in this motion are true and correct.

February 2, 2026
Date

Randolph George Duey
Printed Name

09884-016
Federal Bureau of Prisons Register No.

FCI Butner Medium II
Federal Bureau of Prisons Facility

PO Box 1500 Butner NC
Institution's Address
27509

DUEY, RANDOLPH 09884016

AO 250 (Rev. 09/2024) Pro Se Motion for Compassionate Release

ATTACHMENT 1

# UNITED STATES DISTRICT COURT
## FOR THE
WESTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA

Case No. CR85-001M
(Write the number of your criminal case.)

v.

*Please see additional pages*

Randolph G. Duey
Write your full name here.

## PROPOSED RELEASE PLAN
### In Support of Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A)

---

**NOTICE**

The public can access electronic court files. Federal Rule of Criminal Procedure 49.1 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain a person's full social security number or full birth date, the full name of a person known to be a minor, or a complete financial account number. A filing may include *only* the last four digits of a social security number, the year of a person's birth, a minor's initials, and the last four digits of a financial account number.

---

If you provide information in this document that you believe should not be publicly available, you may request permission from the court to file the document under seal. If the request is granted, the document will be placed in the electronic court files but will not be available to the public.

Do you request that this document be filed under seal?

☐ Yes ☒ No

DUEY, RANDOLPH 09384016

AO 250 (Rev. 09/2024) Pro Se Motion for Compassionate Release

ATTACHMENT 1

**PROPOSED RELEASE PLAN**

To the extent the following information is available to you, please include the information requested below. This information will help the U.S. Probation and Pretrial Services Office prepare for your release if your motion is granted.

**A. Housing and Employment**

Provide the full address where you intend to reside if you are released from prison.

*Pleas see additional pages*

Provide the name and phone number of the property owner or renter of the address where you will reside if you are released from prison.

Provide the names (if under the age of 18, please use only their initials), ages, and relationship to you of any other residents living at the above-listed address.

Do you know where you will work if you are released? If so, please provide the name and address of the employer and describe your job duties. If you do not have a specific employer, please describe the type of work you plan to do upon release.

List any additional housing or employment resources available to you.

**B. Medical Needs**

Will you require ongoing medical care if you are released from prison?                                    √

☐ Yes  ☒ No

DUEY, RANDOLPH  09884016

AO 250 (Rev. 09/2024) Pro Se Motion for Compassionate Release

## ATTACHMENT 1

Will you have access to health insurance if released?

☒ Yes ☐ No

If yes, provide the name of your insurance company and the last four digits of the policy number.

The Veterans Administration, plus other sources.

If no, how do you plan to pay for your medical care?

The above sources plus my income from work.

If no, are you willing to apply for government medical services (Medicaid/Medicare)?

☒ Yes ☐ No

Do you have copies of your medical records documenting the condition(s) for which you are seeking release?

☒ Yes ☐ No

If yes, please include them with your motion.

If no, where are the records located?

Are you prescribed medication in the facility where you are incarcerated?

☒ Yes ☐ No

If yes, list all prescribed medication, dosage, and frequency.

Apixaban (for clot prevention) two pills daily
Metformin (diabetes) four pills daily

Do you require durable medical equipment (e.g., wheelchair, walker, oxygen, prosthetic limbs, hospital bed)?

☐ Yes ☒ No

DUEY, RANDOLPH 09884016

AO 250 (Rev. 09/2024) Pro Se Motion for Compassionate Release

## ATTACHMENT 1

If yes, list equipment required.

_____

_____

Do you require assistance with self-care such as bathing, walking, toileting?

☐ Yes ☒ No

If yes, list the required assistance and how it will be provided.

_____

_____

Do you require assisted living?

☐ Yes ☒ No

If yes, provide the address of the anticipated home or facility and the source of funding to pay for it.

_____

_____

Are the people you are proposing to reside with aware of your medical needs?

☐ Yes ☐ No

Do you have other community support that can assist with your medical needs?

☐ Yes ☐ No   Not yet

Provide their names, ages, and relationship to you. If the person is under the age of 18, please use only their initials.

_____

_____

Will you have transportation to and from your medical appointments?

☒ Yes ☐ No   The bus

DUEY, RANDOLPH  09884016

AO 250 (Rev. 09/2024) Pro Se Motion for Compassionate Release

## ATTACHMENT 1

Describe the method of transportation.

City bus line.

## SIGNATURE

I declare under penalty of perjury that the facts stated in this attachment are true and correct.

January 15, 2026

Date

Randolph George Duey

Printed Name

09884-016

Federal Bureau of Prisons Register No.

FCI II, Butner, NC

Federal Bureau of Prisons Facility

27509

Institution's Address

Randolph G. Duey

Signature

DUEY, RANDOLPH  09884016

AO 250 (Rev. 09/2024) Pro Se Motion for Compassionate Release

ATTACHMENT 2

# UNITED STATES DISTRICT COURT
## FOR THE
_WESTERN_ **DISTRICT OF** _WASHINGTON_

UNITED STATES OF AMERICA

Case No. _CR85-001M_
(Write the number of your criminal case.)

v.

_Randolph G. Duey_
Write your full name here.

## MEDICAL RECORDS AND ADDITIONAL MEDICAL INFORMATION
### In Support of Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A)

---

### NOTICE

The public can access electronic court files. Federal Rule of Criminal Procedure 49.1 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain a person's full social security number or full birth date, the full name of a person known to be a minor, or a complete financial account number. A filing may include *only* the last four digits of a social security number, the year of a person's birth, a minor's initials, and the last four digits of a financial account number.

---

If you attach documents to this form that you believe should not be publicly available, you may request permission from the court to file those documents under seal. If the request is granted, the documents will be placed in the electronic court files but will not be available to the public.

Do you request that the attachments to this document be filed under seal?

☐ Yes ☒ No

DUEY, RANDOLPH  09884016

AO 250 (Rev. 09/2024) Pro Se Motion for Compassionate Release

ATTACHMENT 2

# MEDICAL RECORDS AND ADDITIONAL MEDICAL INFORMATION

To the extent that you have medical records or additional medical information that supports your motion for compassionate release, please attach those records or that information to this document.

## SIGNATURE

I declare under penalty of perjury that the facts stated in this attachment are true and correct.

February 2, 2026
Date

Randolph George Duey
Printed Name

09884-016
Federal Bureau of Prisons Register No.

FCI Butner Medium II
Federal Bureau of Prisons Facility

PO Box 1500 Butner, NC 27509
Institution's Address

_Randolph G. Duey_
Signature

DUEY, RANDOLPH 09884016

AO 250 (Rev. 09/2024) Pro Se Motion for Compassionate Release

ATTACHMENT 3

# UNITED STATES DISTRICT COURT
## FOR THE
_WESTERN_ **DISTRICT OF** _WASHINGTON_

UNITED STATES OF AMERICA

v.

_Randolph G. Duey_
Write your full name here.

Case No. _CR85-001M_
(Write the number of your criminal case.)

_Please see Exhibit #8_

## COVER SHEET FOR ADDITIONAL INFORMATION
### In Support of Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A)

---

**NOTICE**

The public can access electronic court files. Federal Rule of Criminal Procedure 49.1 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain a person's full social security number or full birth date, the full name of a person known to be a minor, or a complete financial account number. A filing may include *only* the last four digits of a social security number, the year of a person's birth, a minor's initials, and the last four digits of a financial account number.

---

If you attach documents to this form that you believe should not be publicly available, you may request permission from the court to file those documents under seal. If the request is granted, the documents will be placed in the electronic court files but will not be available to the public.

Do you request that the attachments to this document be filed under seal?

☐ Yes  ☒ No

DUEY, RANDOLPH  09884016

AO 250 (Rev. 09/2024) Pro Se Motion for Compassionate Release

## ATTACHMENT 3

# ADDITIONAL INFORMATION

To the extent that you have additional information that supports your motion for compassionate release, please attach those records or that information to this document.

### SIGNATURE

I declare under penalty of perjury that the facts stated in this attachment are true and correct.

February 2, 2026
Date

Randolph George Duey
Printed Name

09884-016
Federal Bureau of Prisons Register No.

FCI Butner Medium II
Federal Bureau of Prisons Facility

PO Box 1500 Butner, NC 27509
Institution's Address

Randolph G. Duey
Signature

DUEY, RANDOLPH 09884016

Compassionate Release: Introduction to Additional Pages

(Exhibit 1: Letter to Warden--Exhaustion of Administrative Remedies)

(Exhibit 2: Recent Progress Report)

I've been reading history for my entire adult life. I've been studying politics since before I was incarcerated, and economics and some religion and, willy-nilly, putting a lot of thought in on human behavior. I'm comfortable with all these areas. But I have an overwhelming mental block when it comes to the law, which has been getting worse with my new friend, cognitive decline. The law is a huge body of work and all I'm interested in is what's necessary to help me win my release, but I've been locked up for the whole computer age and navigating the system is hard for me, and knowing what to look for is even harder. So I've asked a friend who's very good with the law to advise me on legal matters and to locate some pertinent case law so I can write this petition.

When Covid arrived some years ago I started hearing about people being released for various reasons. Not really knowing much about the law, I wrote a petition for compassionate release based on what I thought was solid reasoning, and sent it to Seattle, the 9th Cir., hoping for a break. It was promptly sent back with the message that 3582 didn't apply to me because I'm old law. I didn't know 3582 from 4205.

After a period of discouragement, I tried again. I didn't have much reason for hope but I did a 4205 petition and sent it to Warden Kelly here a couple years ago, hoping she'd put me in for it. I never received an acknowledgment of receipt, but I waited for a year, not wanting to press her on it. When I went to ask her about it I was told she'd just gone to another institution. So I waited another few months till the new Warden arrived, Warden Leu, and, after giving him some time to get into his routine, I asked him about my petition. After a few months of searching I was told that it had disappeared. That was about a year ago. But Warden Leu told me that all I had to do was complete a petition and he'd put me in for it.

My understanding of the law, at that time, was that the US Parole Commission still had the final word on the matter. I believed that there was very little chance they'd release me on a compassionate release (CR) petition if they hadn't already done so after serving 30+ years, with pretty much everything else on top--unless I were dying. I mentioned this to Warden Leu, who didn't know the law but he repeated that he'd support my motion for CR. I wasn't aware of it, and Warden Leu didn't think to mention it, but his recommendation would have carried a lot of weight, likely balancing the USPC's resistance.

Anyway, I began working on it. Shortly after that Warden Leu retired and I never heard from him again. For what it's worth, Warden Leu's recommendation could be taken as evidence that the government does not believe I'm a danger to anyone. But, of course, you have only my word on that.

Shortly thereafter, news came through that 4205 had been repealed. The following paragraph explains the government's position: From United States v King, No. 81- cr - 00311-RS-1, 2025, U.S. Dist. LEXIS 218661 (ND CA, Nov. 4, 2025) "As noted in prior orders, 4205(g) was repealed in 1984, but has remained in effect with respect to "old law" prisoners, as the result of a series of Congressional enactments. See Order, entered December 23, 2020 Dkt. No. 278(2025 U.S. Dist. LEXIS 5) (recounting statutory history). The final Congressional extension of the "old law" regime however, expired on October 31, 2025. See Pub. L. 119-4, Div. A. Title I, 1115, Mar. 15, 2025, 139 Stat. 15; see also, Dkt No. 299, p 14 ("it is the government's understanding that the current extension will expire on October 31, 2025). Thus, at this point in time, so-called "old law" inmates can no longer seek compassionate release under 4205(g).5

So...what does it mean? Where do things stand now on this issue? There seems to be considerable confusion. Courts have not united in a common approach to this turn of events even though it's been a long time coming and could have been anticipated. But then, implementation of compassionate release has always been a source of disagreement.

Regarding Compassionate Release: It's undisputable that at some point Congress decided that there were factors external to the law itself that have a legitimate bearing on the course of any sentence imposed by a court, and that justify making an adjustment to the original sentence in favor of the convicted, to alleviate undue suffering caused by a sentence that has lost validity as a result of medical conditions or the positive behavior of the convicted. This is the principle of compassionate release. It's an act of Congress and it's the law of the land.

Unfortunately, for many who hope to benefit from the principle, it's a law with no teeth: there are no imperatives and few specifics governing its implementation. Consequently, there has always been a resistance to actually enforcing the spirit of the principle by those who disagree with it. An analysis of that resistance, particularly recognition of the great geographical differences in the success of motions for CR, justifies the conclusion that this resistance is not a matter of legal principles but of the personal principles of those reviewing motions for CR.

The geographical differences in the success of motions for CR for movants with virtually identical qualifications amounts to the same thing as sentence disparities among similarly situated defendants, which was found to be unconstitutional. The recognition commonly given sentence disparities and the widespread success of the legal remedies correcting them throughout the legal world are just as relevant and appropriate in the discharge of motions for CR, and would be beneficial in correcting the uneven treatment of them. The present disparity with regard to motions for CR is simultaneously a legal issue that has not yet been brought to heel, yet one with a simple, available solution, consistent with the original principle that led to CR to begin with--compassion. All that's missing is consistency in the process.

The following quote is representative of many possible ones that could be culled from cases pertaining to CR and the legal struggle over implementation of the CR principle: From United States v Wright, 46 F. 4th 938 (9th Cir. 2022) "The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, established significant changes to the procedures for filing a motion for compassionate release. As originally enacted, 3582 (c)(1)(A)(i) vested the Bureau of Prisons with exclusive discretion to file compassionate release motions. The Department of Justice found in 2013 that this process was marked by delays and mismanagement, and that the Bureau exercised this discretion so sparingly that an average of only 24 imprisoned persons were released each year by BOP motion. United States v Booker, 976 F. 3d 228, 230-32 (2nd Cir. 2020) (observing that out of 208 prisoners approved for compassionate release, 13% died awaiting a final decision by the BOP director) Accordingly, Congress amended 3582 (c) (1) (A) to remove the Bureau of Prisons from its ...role as gatekeeper over compassionate release petitions and to expand the use of the compassionate release process. Following the passage of the First Step Act defendants are authorized to directly petition the court for compassionate release after exhausting their administrative remedies...."

I would like, respectfully, to call attention to the above wording, "...to expand the use of the compassionate release process." This is the central issue upon which everything turns--the heart of the matter. As previously mentioned, the highest authority in the land, Congress, has declared itself in support of the principle of compassion in US law with the implicit expectation that courts will observe its will on the matter with uniform compliance, just as has been done consistently throughout the country regarding the principle of uniform sentencing for similarly situated defendants.

I know my crimes were serious. But my rehabilitation has been just as serious. An honest reading of the overall story is one of an unusual, short-lived burst of unacceptable behavior in a lifetime of contrasting normality. My record isn't perfect but it's very good. What I'm asking for is not so much compassion as recognition.


Additional Pages: Responses to Pages 1-16 of the Compassionate Release Form

V.  Grounds for Release
B. Other extraordinary and compelling grounds...

There are three primary grounds for release:
-- You must be at least 70 years old--I'm 75
-- You must have served at least 30 years of your sentence--I'm in my 42nd straight year
-- You must not be a danger to any person or to society in general

The first two qualifications are simple. I would like to make the case for my fulfillment of the third qualification, and in doing so, to also make the point that I'm unlikely to ever reoffend.

1.  According to "The Sentencing Project", "...a robust study of empirical literature shows that people released after decades of imprisonment, including for murder, have low recidivism rates. Recidivism is particularly uncommon among older releasees, including those who committed violent crimes." (Ashley Nellis, "The Sentencing Project", "Nothing But Time: Elderly Americans Serving Life Without Parole," June 23, 2022)

2.  The "Unger Group" followed 200 prisoners in Maryland who were released between 2013 and 2018. On the average they were 64 years old and had served 35 years, 84% for murder and 13% for rape. As of April 2022, only 3% were rearrested  for any reason, including a technical violation of probation.

These references are among a large body of similar ones that make the same point in different ways, supporting the likelihood that I will not reoffend or be a danger to anyone.

The Supreme Court has stated in Pepper v United States, 131 S. Ct. 1229, 1242 (2011) "...exemplary postsentencing conduct may be taken as the most accurate indicator of present purposes and tendencies and significantly to suggest the period of restraint and the kind of discipline that ought to be imposed on him." (The language is strange but SIC.) The principle I'm extracting from this quotation is the logical point that past behavior is the key to predicting future behavior. I'd like to take a short time to describe how my life, in general, illustrates this principle.

I was arrested in 1984, at age 33. At that point I had no criminal history. I'm not now and never have been the criminal type and never will be. I've never had any intentions of ever entering that world and had no innate tendencies that way. I graduated high school in 1969, did a hitch in the US Air Force during the Viet Nam war and went to school at Eastern Washington University on the GI Bill. (Exhibit 3, College Transcripts) After the first year of college I worked jobs on the campus because the GI Bill didn't go that far. It hurt my grades some but the money was necessary. I was the student manager of the campus restaurant in the Pence Union Building--the PUB, for a year. I serviced the campus fire extinguishers for the safety department for a year, which really kept me busy. I played soccer in spring, summer and fall leagues in the adult soccer league in Spokane, and also at EWU. I also coached the same youth soccer team from 5th and 6th grades up through 12th grade, which ended only when I did the things I'm serving time for. Then I worked a couple jobs I didn't really like and finally landed in the US Postal Service in 1979 and worked there until I quit in 1984 to, again, do the crazy things I did that I'm still serving time for today.

I'm an oddball. I don't say that as any defense or justification for anything I've done; just as an explanation for the unusual trajectory my life has I've taken. I never found anything in college that really grabbed me, that I could picture myself doing for life. And I wasn't that interested in what everyone else I knew was heading for--marriage, family and career. The only marriage I'd seen up close and personal was my parents' and I didn't want any of that. And I've never found any way of making money that interested me as a career. I just didn't want to do the things that were available. But I didn't want to waste my life. I wanted to be a positive force in the world. I was looking for a cause to get involved in. "The need to fill an inner void is not limited to people who become drug addicts, but afflicts the vast majority of people of the late modern era, to a greater or lesser degree." (Johann Hari, "Chasing the Scream", a book about the drug problem, the social/legal phenomenon known as the 'War on Drugs', addiction in general and possible solutions to these problems.) I definitely chose the wrong thing but those were my true intentions.

I wanted to understand the world of politics because I knew it was one of the most important areas for understanding contemporary affairs and future trends and it's a complex, challenging study that I could work at for a long time. Plus, I've just been drawn to it for most of my adult life.

I knew that there were only two areas I needed to research--conservatism and liberalism. I began my study with conservatism because Ronald Reagan was in the news a lot then and it was my first experience with politics and I was attracted to him. Also, my parents leaned toward the political right as the default position of those who weren't really politically oriented but wanted to be on the safe side, and were resistant to change, as a matter of habit. Unfortunately, I went further and deeper into it than I should have, all way to the racist, neo-nazi, autocratic version. The laws I broke were in service to a set of ideas I found attractive in the last part of the 20th century. I was a crusader. I was also a misinformed, damn fool, but I didn't stay that way.

My point is that, despite the trouble I caused and the lives I disrupted, I was never the criminal type. In my short experience with crime I never did anything for myself, to make my life easier or more luxurious. Nothing I did helped me. In fact, I'm lucky to be alive today. This isn't the usual background of those who appear in courtrooms waiting to be sentenced. No one who did what I did could claim to be a hero, but I know that, if I were examining two defendants, one with the normal jail-cell background and one with my background, I'd have much more confidence in the one with my background to become a productive member of society after release.

After trial and arriving at Lewisburg Penitentiary in 1986 I made a firm commitment to myself that I was not going to become a convict. So, when other guys were using or selling drugs or stealing government stuff and selling it on the compound or playing cards or betting on games or making hooch or getting tattooed or jockeying for position in their gang wars or watching whatever was on the TV's, I was trying to have a real life, in the most unlikely of places--prison. I worked on myself. I'm a reader, mostly serious stuff. I'm a history major and I've definitely read lots of that, often spending my own money for books that prison libraries don't have much of. Also, I've read lots of politics, religion, economics, human behavior, science. And novels, when I can't get the good stuff.

I've had two big projects while incarcerated. The first one was guitar. I'd always been interested in guitar and played off and on for years but never got serious about it. But being incarcerated gave me the opportunity I may never have had in the world to do something I thought I could do--compose for classical guitar. So I bought a guitar in the days long ago when we could still have one as personal property and I started to play. I ordered books of sheet music and learned to play pieces by the masters. I looked at what they wrote and how they did it. I learned, over time, what I needed to to create pieces for solo guitar--modern classical guitar. I had a lot to learn but I got where I wanted to go. It was the best 'program' I've taken since I was incarcerated. I had no teacher for any of it. I composed 44 pieces, 242 pages of music from 1992-2004.

When they took guitars as personal property in 2004 I thought it was over. But a few years later I got the bug to play again even if the situation wasn't very good. I now had to go to Rec to borrow a guitar. I began playing there with all the noise, etc. I've literally sat in the corner of the gym and played guitar while they were playing a basketball game because it was the best place I could find to work. I began reworking my older pieces to bring them up to the highest level I could. Lately, though, things have

gotten so noisy and chaotic in Rec it's no longer possible to compose there and that's the only place where I can get a guitar, so I'm just waiting to be released to begin composing again. As proof I'm not just talking, I've enclosed a copy of the Certificate of Registration from the Office of Copyright for my "Fifteen Preludes for Solo Guitar", 75 pages of music, the only part of my repertoire I've copyrighted. (Exhibit 4, Certificate of Registration for "Fifteen Preludes for Solo Guitar")

The other big project I've worked on for most of the years I've been incarcerated is a continuation of my writing, journalistic writing--essays, Op-Eds. I love creative work and I love the world of ideas, and now I had the time and the inclination to work at it. I first realized I had some writing ability in college when my writing used to get me an extra grade on term papers. When I was studying conservatism I published my own little newsletter for a short time called "Column Right," for which I did all the writing. In the late years of the 20th century I wrote articles for far right wing publications around the country. In prison I've helped out friends who were taking classes at college and needed help learning to write.

Not long after 9-11 I had mostly withdrawn from the right wing. It occurred to me then that I'd never finished my original objective in understanding politics--I'd never checked out the other side, liberalism. By this time I had a lot invested in conservatism, so this project was something I had to discipline myself to do at first, but I quickly realized that this was where I'd belonged all the time because I'm a great fan of democracy. Since Obama's time I've spent lots of time writing on politics and improving my knowledge and technique. It's a great pastime and it could possibly make money for me some day. And that skill has value in the market place, even for one with a police record, like me. The Internet has expanded the world of print media. You don't have to work for an established newspaper or magazine any more. There are other avenues for success and that open doors for me.

It's my intention to support any claims I make in this petition with legal precedent or argument, documentation, solid proof or logic, etc. I've now made the claim that I've worked long and hard to become a well-practiced and skillful writer and that this could become a money maker for me. The only way I can provide evidence for this is to send you a sample of my writing. I don't want to ask too much of you, so I've sent a small section of a long conversation I had on paper with a friend here about a year ago. It has elements of history, religion, politics, human behavior, etc. (Exhibit 5, Except from "Notes to Nick")

I have an irrevocable political side. One of the hard realities of politics is that it's a partisan game. Whatever your beliefs are they're likely to be somewhere between annoying and damaging to those with opposing beliefs. I can't help being political but I don't demand others feel the same way I do. And there's a strong practical side to this: There are only two poles in the political world--autocracy and democracy. I'm a big fan of the democratic family and it's an often-expressed truism that, unless we can find a critical mass of people who are willing to spend the time and do the work to understand the ugly realities of human behavior and political systems, democracy won't work. It's not for the lackadaisical. Frankly, I have serious doubts that we're ever going to achieve that standard, but I'm available and I enjoy the work.

History, politics, economics, religion, human behavior--they're all their own areas of study, with their own separate logic and imperatives. But when the discussion turns to areas where all of them are involved at once, they all converge into the one over-domain: politics.

At this point I thought I was doing pretty well. I thought I was on my way to finding the formula for solving our problems. Then the weight of that nagging thorn in my side that began in the early 90's became too much. My whole philosophy fell like a house of cards when I finally accepted the full realization that human nature and human behavior just aren't compatible with "peace on Earth, good will toward men." As Pogo said, "We have met the enemy, and he is us." No matter what system we have in place, there will be no end of problems. The best we can do is resign ourselves to dealing with the human problems that will come to us under any conditions, and discipline ourselves to not to BE the problem.

So...I'm not saying I was an angel. I've had my irresponsible moments. But, on a continuum between criminal and solid citizen I was almost all the way toward solid citizen. There's very little room here for criminality. My charactar profile and the major steps I've taken in my life aren't what would be expected from a convict. My institutional behaviour could fairly be called "exemplary post-sentencing conduct." From the beginning of my sentence "exemplary" was what I was shooting for.

**   In answer to the question that was asked on page 4 of 16 of the CR form: "Has the Director of the BOP determined that you are not a danger to the safety of any other person or the community, as provided by 18 USC 3142 (g)? I checked the Yes box: When the First Step Act went into effect they sent all inmates in the BOP a form indicating their chance of recidivism. You were rated High, Medium, Low or Minimal. I was rated Minimal. (Exhibit 6, FSA form--Minimal)

4

V. Grounds for Release
B. I received an unusually long sentence

I've always been conscious of the serious nature of the offenses I committed. There was only a very short period of my life where something like that was possible. Compared to the rest of my life, this can legitimately be considered a 'one and done,'-- unlike the rest of my life. Nearly all the laws I broke, certainly the main ones, occurred in a 4-month period from April to July, 1984, but all of them were in 1984. I'm not saying that this should be used to diminish the seriousness my crimes; I'm just making the point of there being no ongoing pattern of criminal behavior here. I never pursued a life of crime to support myself. I was a working man. I had to quit my job in the Postal Service and quit playing soccer and coaching my soccer team to do what I did to end up in here.

There's a reasonable chance that, if I were sentenced today, a different decision might well be made as a result of changes in the law.

--- At the present time I've served 41+ consecutive years. Plus,
--- I get 10 days per month Statutory Good Time (SGT). Using a rounded off 40-year figure for time-served, 40 years times 12 months per year = 480 months, times 10 SGT days per month = 4800 SGT days, divided by 365 = 13 years SGT.
--- I also receive Industrial Good Time (IGT). I have a total of 274 months in Unicor. (My January, 2026 Unicor pay statement-- (Exhibit 7)-- only shows 232 months in Unicor but that's because I left Unicor from 1992-2004 to concentrate on composing for guitar, the only time I didn't work at Unicor--except time waiting to get in after a transfer--in the whole 41-yr period of my sentence. When I was rehired in 2004 they didn't include the time from before my rehire date because they just don't do that after a separation. But enclosed is a computer printout showing my years at FCI Petersburg and FCI Oxford 1987-92, prior to separation. I had 24 months at Peterburg and 18 at Oxford prior to the separation.`I also had 8 months at USP Lewisburg but they couldn't find records for that, so I'm not asking for it.) So... IGT is figured at 3 days per month for the first year, 12 months x 3 days per month = 36 days. Then, it's 5 days per month for every year after that, or 262 months x 5 days per month = 1,310 days, divided by 365 = 4 years. (My SGT and IGT aren't projected good time; they're Earned good time.)
--- So, if my 41 years served time are added to 13 years SGT and 4 years IGT we have the equivalent time served of just shy of 58 years, 690-some months. Numbers are rounded off for convenience but are accurate. (Exhibit 8, Computer printout from Unit Team showing Unicor months from before 1992)

2.  The sentencing structure under which I was sentenced gave broad discretion to District Courts to pass any sentence within the statutory guidelines. This permissive sentencing practice created disparate sentencing among similarly situated defendants, a practice that was found to be unconstitutional. As a result, Congress established the Sentencing Commission to correct this practice. Courts now use the guidelines as a starting point and then apply the 3553 factors to arrive at a sentence that's sufficient to achieve the goals of deterrence and punishment but not greater than necessary. These changes could support a finding that my sentence was greater than necessary.

3.  The statutory maximum for the majority of my crimes was 20 years or less. When both the legal and external factors are applied, it's certainly possible that some of my sentences would still be run consecutively. But it's unlikely that all five would be, for a 100-yr sentence. The average term for homicide in 2024 was 270 months; for robbery or firearms charges, 51 months.

4.  I was given a 20-yr term for RICO and another 20-yr term for conspiracy to commit RICO, both to run consecutively. In 28 U.S.C. 994 (b) (2)- Congress directed the Sentencing Commission to "...insure that the guidelines...reflect...the general inappropriateness of imposing consecutive terms of imprisonment for an offense of conspiring to commit an offense...and for an offense that was the sole object of the conspiracy." (U.S. v Dais, No 03-50173. 101 Fed. Appx 669 (9th Circuit 2004)

Although the Court need not find an extraordinary and compelling reason to grant me a reduction in sentence, the unusually long sentence I'm serving does impact the determination when reviewing the 3553 factors.

.
.
.
.
Proposed Release Plan

Like many elderly inmates, many people I had relationships with have passed. Others have fallen away over the years. I find myself in a position where I don't have any contacts now that I can comfortably ask to help me get restarted out in the world. This isn't something that worries me. Many of the people I know who are soon to be released are in the same position. I'm going to a city I've never lived in, Seattle, but I'm happy to be going there because it's a great place to live, in a good state.

I anticipated being in this position long ago. I have well over $10,000.oo in savings, which will help me get started. (Exhibit 9, Commissary slip showing current balance) I'll have a free bus pass for transportation. I won't have to buy a car, which I'm trying to avoid to eliminate the car payment and insurance, at least for the time being. I'm a veteran and the Veteran's Administration is a good organization, very helpful. They'll help me find housing a employment. Plus, websites like "Indeed" are good at matching people with jobs. I'll have Social Security benefits and Food Stamps, Veteran's medical and insurance. I'll have my music and my writing, both of which may bring in some money. Although because of too much sports I've had hip replacement and knee replacement surgeries, I can still get around pretty well. I'm definitely not ready to retire and probably never will be. I understand I can work as many hours as I want and still get Social Security. All I need is a few months at a halfway house and I'll be fine.

As stated previously, I have 25 years in Unicor, enough to retire anywhere else in America. I've worked in Unicor as if it were my own company. In the early 21st century Unicor had a policy of awarding 'Worker of the Month' awards, with $25 lump sums. I earned 3 of these and was put in for a 4th but was suddenly transferred. (Exhibit 10, Unicor Incentive Awards) Also enclosed are some worker evaluations and recommendations. (Exhibit 11, Worker evaluation, recommendations)

I have no desire to accumulate possessions or have a luxurious life style. A tiny apartment of my own is my dream--simple tastes, simple enjoyments, working, working on my music, maybe having a blog, doing research on the internet, pursuing my spiritual path, going to the library. It'll be paradise compared to the past 41 years.

.
.
.

Medical Records and Additional Information

(Exhibit 12, Medical Records)

I presently suffer from the following conditions:

1. I had total hip replacement in 2017

2. I had total knee replacement (right knee) in 2018

3. I'm diabetic   (Enclosed is a label from the medication I'm taking for diabetes, Metformin. The dosage is two pills per day. This isn't the normal dosage; four pills per day is.  After taking this medication for two months I began to have a reaction to it-- severe abdominal pain, which is not uncommon. So I'm going through the process of acclimating my system to it slowly to avoid the pain and I'm at the beginning of the process.) (Exhibit 13, Medical records, with Metformin label)

4. I have vascular disease (have had blood clots in both legs) and am at high risk for stroke

5. Although I've taken good care of my teeth they're still in terrible shape and have been for many years. I'm unable to eat most fruits and vegetables now and am unable to get nutritious replacements. For the past six months I've been, basically, swallowing much of my food whole. BOP medical staff are chronically short-handed and overworked. I've needed dentures for many years and am at least 1-2 years away from them at the present time. This will go away quickly out in the world.

All things considered, the truth is, I'm in pretty fair health for my age right now. But I'm 75 and anything can happen. My Dad died at age 74 from vascular disease and Alzheimer's. I, too, have vascular disease and, although I can't say for sure I have Alzheimer's, I'm definitely experiencing cognitive impairment: short-term memory loss and diminished ability to handle raw data, etc., and it's this that worries me the most. Also, there are a number of other things, like a back pain that's been slowly getting worse for years, kidney stones, a bothersome Morton's neuroma on my left foot. It's the accumulation of things because of age that's a danger. (These last things are undocumented. With conditions deteriorating in the BOP it's getting very difficult to document health issues.  At best it will take lots of time--after 41+ years I don't have time.)

My Dad experienced a period of rapid decline in the last couple years before his death. I can't help but feel an urgency to get out there and try to assemble the elements of a stable support environment around me to weather the inevitable health storms that are sure to come my way. The longer my release is delayed, the more difficult this will be.

(Exhibit 14, Anger Management diploma. Somehow, this was never entered into my progress report info. It's one of the substantive programs offered by the BOP, which I took.)

Alternative Request for Relief Under Rule 35(b)

Considering the time in which my offenses occurred--prior to 1987--the version of Fed. R. Civ. P. 35(b) that applies to me is as follows:

Reduction in Sentence. A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within 120 days after the sentence is imposed or probation is revoked, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction or revocation. The court shall determine the motion within a reasonable time. Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision. Fed. R. Civ. R. 35(b) (1985) This version of Rule 35 (b) was intended "to give every convicted defendant a second round before the sentencing judge" while affording "the judge an opportunity to reconsider the sentence in light of any further information about the defendant or the case which may have been presented to him in the interim." United States v Guglielmi, 929 F. 2d 1001, 1005 (4th Cir. 1991) (internal quotation marks and citation omitted).

Although I understand I'm beyond the 120-day time frame, I am respectfully requesting that the Government waive this time limit to allow the reduction in sentence if the Court deems it appropriate. This request is not without precedent, as reviewed in a recent case, United States v Porter. Mr Porter was 75 years old and served 41 years and was released under old rule 35(b). Mr Porter was part of a large-scale drug conspiracy to import drugs into the United States. He was serving a 10-yr sentence when he was indicted on 28 counts and sentenced to 75 years after a 10-day trial. He was found to be the most culpable offender. No. 3:85-cr-00062-MR-1-, 2025 US Dist. LEXIS 223956. Mr Porter was granted release based on the former rule 35(b). Id.

Other examples of courts using old rule 35(b) to grant a reduction in sentence where there is potentially no other remedy are:
-- See. e.g. United States v Toney, No. 1:83-CR-00017, Doc. 86 (D.N.J. Jan 24, 2025) (granting compassionate release under old rule (35(b) where defendant had been incarcerated more than 42 years for bank robbery and had been a model inmate)
-- United States v Pray, No. 88-175, 2024 WL 4345067, at *6 (D.N.J. Sept 30, 2024) (granting relief under old rule 35(b) where defendant was 75 years old, had been prison for over 35 years, showed exemplary rehabilitation, and was suffering from a "serious deterioration" in his health)
-- United States v Redwine, No. 3:87 cr70, 2020 WL 6829848, at *8 (E.D. Va. Nov 20, 2020) (granting compassionate release under old Rule 35(b) where defendant had served 33 years in prison and his age and medical conditions increased his risk of serious complications from Covid-19)
-- United States v Rivera, No. 86-CR-1124, 2020 WL 2094094, at *4-5 (S.D.N.Y. May 1, 2020) (granting sentence reduction under old rule 35(b) for defendant whose age and medical conditions placed him at high risk for Covid-19)

As drawn from the reasoning warranting compassionate release, if the Court doesn't find that 3582 applies to me, I believe there is sufficient evidence that a reduction in sentence to time-served--in this case the equivalent of 58 years--is justified.

Randolph G. Duey
Federal Correctional Inst. II
Butner, NC   27509

9589 0710 5270 3271 5488 96

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

CERTIFIED MAIL

9589 0710 5270 3271 5488 96

FILED
LODGED
RECEIVED

MAIL

MAR 02 2026

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

Clerk of Court
United States District Court
Western District of Washington
700 Stewart St., Suite 2310
Seattle, WA          98101



POSTAGE DUE

Retail

U.S. POSTAGE PAID
PM
BUTNER, NC 27509
FEB 24, 2026

98101

$0.00

RDC 03                           S2324D500798-06

PRIORITY MAIL ★
TRACKED ★★★ INSURED ★

UNITED STATES POSTAL SERVICE®

For Domestic and International Use          Label 107R, May 2014

FEDERAL CORRECTIONAL INST. #2
P.O. BOX 1500
BUTNER, NORTH CAROLINA 27509

DATE: _____ 2-19-26 _____

*SPECIAL/LEGAL MAIL*

The enclosed letter was processed through special mailing
procedures for forwarding to you. The letter has been
neither opened or inspected. If the writer raises a question
or problem over which this facility has jurisdiction, you
may wish to return the material for further information
or clarification. If the writer enclosed correspondence for
forwarding to another addressee, please return the enclosed
to the above address.